# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:    1:19CR404 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| LEODANIS TALAVERA, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER ON LOSS AMOUNT** |
| Defendant. | ) | |

### I.  INTRODUCTION

On October 9, 2019, Defendant Leodanis Talavera ("Talavera") pled guilty to Counts 1, 4, and 5 of the Indictment against him and his two co-conspirators, Guillermo Vazquez ("Vazquez") and Walter Leyva Rojas ("Rojas"), which charged Talavera, specifically, with one count of Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(b)(2), one count of Access Device Fraud by Possession of 15 or More Devices in violation of 18 U.S.C. § 1029(a)(3) and 18 U.S.C. § 2, and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2. (Min. of Proceedings Oct. 9, 2019; Indictment 1-8, ECF No. 13; Plea Agreement ¶¶ 2, 11, ECF No. 48. *See also* PSR 2 and ¶¶ 1, 4-7, ECF No. 75.) Although a plea agreement was executed, it provides that Talavera and the government maintain a disagreement only as to the loss amount as calculated under the United States Sentencing Guidelines ("Guidelines"), specifically U.S.S.G § 2B1.1(b)(1) and the associated Application Note 3(A) and Application Note 3(F)(i), and whether that calculated loss amount is attributable to Talavera for the purpose of determining Talavera's advisory sentence guideline range. (Plea Agreement ¶¶ 14, 17, ECF No. 48. *See also* PSR ¶ 8, ECF No. 75; Talavera Sentencing Mem., ECF No. 77; Government Sentencing Mem.,

ECF No. 79.) This disagreement was brought to this Court's attention during the initial sentencing hearing. (*See* Min. of Proceedings Feb. 27, 2020.) This Court has considered the submitted written arguments from both Talavera and the government, and, for the reasons set forth in this Memorandum, finds that the loss amount calculated pursuant to U.S.S.G. § 2.B1.1(b)(1) is $487,985.43 and that the government has met its burden of proof and, therefore, the entirety of this amount is attributable to Talavera.

## II. BACKGROUND

As charged, between April 4, 2016 and January 25, 2019, Talavera and his two co-conspirators stole credit and debit card account numbers and associated encoded data utilizing skimmers attached to various gas station pumps and ultimately utilized the stolen information to make unauthorized retail purchases. (Indictment ¶¶ 1-2, 6-10, 15-18, ECF No. 13. *See also* Plea Agreement ¶¶ 22-24, ECF No. 48.) More specifically, Talavera and his two co-conspirators installed skimming devices to the point-of-sale terminals of gas station pumps. (Plea Agreement ¶¶ 22(b)(i); 22(d), ECF No. 48.) The installed skimming devices pulled account information and other associated encoded data from debit and credit cards used at the pump. (*Id.*) That stolen information was, in turn, downloaded and then re-encoded onto counterfeit debit and credit cards. (*Id.* at ¶¶ 22(b)(ii); 22(e)-(f).) Talavera and his co-conspirators then used the counterfeit debit and credit cards to purchase gift cards, merchandise, and other items of value. (*Id.* at ¶¶ 22(b)(iii); 22(g)-(h).)

The conspiracy, as charged, ended January 25, 2019 when a skimming device was discovered at a gas station pump in Georgia. (PSR ¶ 19, ECF No. 75.) Local police officers observed a vehicle park near the pump where the device was discovered and watched a male exit the vehicle and examine the pump without making a purchase. (*Id.* at ¶ 20.) The officers ultimately conducted a

traffic stop of the vehicle, which Talavera was driving and in which Vazquez was a passenger. (*Id.* at ¶ 21.) A search of the vehicle resulted in the discovery of a laptop, a thumb drive, receipts, a pry bar, epoxy, a multi-tool, gloves, eight credit cards with zip codes written on the back and the name "William Vazquez" embossed on them, gas pump seals, two cell phones, and a modified USB cable for a skimming device. (*Id.*)

Subsequent investigation revealed that the account numbers encoded on the eight physical credit cards recovered from the vehicle were stolen, and the use of these stolen account numbers resulted in approximately $12,000 in loss. (*Id.* at ¶ 22.) Additionally, the laptop and thumb drive recovered from the vehicle provided the names and stolen account numbers of approximately 2,400 victims. (*Id.* at ¶ 23.) Finally, records revealed that Talavera attempted multiple transactions on cards that were not consistent with legitimate card usage – for example, rapid back-to-back charges – for an attempted loss amount of approximately $15,000. (*Id.* at ¶ 25.) Accordingly, Talavera specifically admits that between August 6, 2018 and January 25, 2019, he and Vazquez, drove between Florida, Georgia, and South Carolina, obtained the stolen account information from the skimming devices installed in gas station pumps, re-encoded the stolen information onto counterfeit cards, and used the counterfeit cards to purchase approximately $26,000 in retail merchandise from big box stores in Georgia and South Carolina. (Plea Agreement, ¶ 22(i), ECF No. 48.)

Given this information and Talavera's admissions in the plea agreement, the government calculated the total loss amount attributable to Talavera as $487,985.43.[1] (Government Sentencing

---

[1] Both the Plea Agreement and the Presentence Investigation Report ("PSR") indicate that the government calculated the loss attributable to Talavera as $451,500 total. (*See* Plea Agreement ¶ 17, ECF No. 48; PSR ¶ 26, ECF No. 75.) The government subsequently provided evidence that Talavera's undisputed unauthorized transactions totaled $26,485.43. (Government Sentencing Mem. Ex. A, ECF No. 80-1.) The government calculated the remaining $461,500 of its updated $487,985.43 figure by taking the 2,400 victim names and credit card numbers found on the laptop and thumb drive located in the vehicle Talavera drove, removing the duplicates, and multiplying the remaining

Mem. 3-4, ECF No. 79.) Of this amount, the $26,485.43 of Talavera's unauthorized transactions is undisputed. (*See* Plea Agreement ¶ 22(i), ECF No. 48.) With respect to the remaining $461,500, the parties dispute the legality of U.S.S.G. § 2B1.1(b)(1) Application Note 3(F)(i) in calculating the loss amount pursuant to U.S.S.G. § 2B1.1(b)(1). Therefore, the issues before this Court are whether U.S.S.G. § 2B1.1 Application Note 3(F)(i) can properly be applied to the 923 unused victim account numbers when calculating the loss amount applicable to this matter and, whether that calculated loss amount is attributable to Talavera.

**III.**  **ANALYSIS**

1. Calculating Loss Amount Pursuant to U.S.S.G. § 2B1.1(b)(1)

The first step in the criminal sentencing process is calculating the advisory sentence guideline range suggested by the United States Sentencing Commission. *See Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, a court must determine the offense level for the crimes for which the defendant has been convicted and determine the defendant's criminal history category. *See United States v. Boyd*, No. 3:07-CR-3, 2008 U.S. Dist. LEXIS 94565, at *43-48 (E.D. Tenn. Nov. 18, 2008).

In the instant matter, the parties agree on a majority of the offense level guideline calculations necessary to determine Talavera's advisory sentence guideline range. First, they agree that Talavera's conviction of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) carries a mandatory term of imprisonment of two years by statute that is to run consecutively to any other sentence this Court imposes. (U.S.S.G. § 2B1.6(a). *See also* Plea Agreement ¶¶ 2-3, ECF No. 48.)

---

923 victim names and associated account numbers by $500 per victim pursuant to U.S.S.G. § 2B1.1, cmt. n.3(F)(i). (Government Sentencing Mem. 3-4, ECF No. 79; Government Sentencing Mem. Ex. B., ECF No. 80-2.) Despite the different numbers provided in the Plea Agreement, PSR, and Government Sentencing Memorandum, this Court will utilize the $487,985.43 figure as the government has provided evidentiary support for it.

The parties also agree that Talavera's other convictions, Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(b)(2) and Access Device Fraud by Possession of 15 or More Devices in violation of 18 U.S.C. § 1029(a)(3), group for guideline calculation purposes and result in an offense level of 6 pursuant to U.S.S.G. §§ 3D1.2(d) and 2B1.1(a)(2). (Plea Agreement ¶ 17, ECF No. 48; PSR ¶¶ 33-34, ECF No. 75.) Additionally, the parties agree that the offense level is increased by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because the grouped offenses involved more than 10 victims, and the offense level is increased by an additional 2 levels pursuant to U.S.S.G. §§ 2B1.1(b)(11)(A)(i) and 2B1.1(b)(11)(B)(i) because the grouped offenses involved the possession or use of device-making equipment and the production of unauthorized access devices or counterfeit access devices. (Plea Agreement ¶ 17, ECF No. 48; PSR ¶¶ 36-37, ECF No. 75.) Finally, the parties agree that Talavera has accepted responsibility and accordingly recommend a 3-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). (Plea Agreement ¶ 18, ECF No. 48; PSR ¶¶ 43-44, ECF No. 75.) This is where agreement between the parties ends, however.

To complete the offense level calculation for Talavera's convictions, U.S.S.G. § 2B1.1(b)(1) requires an offense level increase based upon the loss amount. Talavera asserts that the offense level increase should be 4 as the total loss of his unauthorized transactions is undisputed as $26,485.43 – a number more than $15,000 but not exceeding $40,000 resulting in a 4-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(C). The government, on the other hand, argues that Talavera's offense level should be increased by 12 because, in addition to the undisputed unauthorized transactions, Talavera possessed 923 unused victim account numbers, resulting in an additional $461,500 in loss pursuant to U.S.S.G. § 2B1.1 Application Note 3(F)(i) for a total loss of $487,985.43, which is more than $250,000 but does not exceed $550,000 resulting in a 12-level

increase pursuant to U.S.S.G. § 2B1.1(b)(1)(G). The disagreement between the parties rests upon the legality of utilizing U.S.S.G. § 2B1.1 Application Note 3(F)(i) in calculating loss amount for the stolen, yet unused, victim account numbers.

Although U.S.S.G. § 2B1.1(b)(1) instructs for an offense level increase based upon loss amount, it fails to define "loss". The Application Notes to U.S.S.G. § 2B1.1 clarify that for U.S.S.G. § 2B1.1(b)(1) in general, loss is the greater of actual loss or intended loss where actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense" and intended loss is the "pecuniary harm that the defendant purposely sought to inflict" including that which was "impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt. n.3(A)(i)-(ii). The Application Notes go further and provide that "notwithstanding" these definitions, for the purposes of application to U.S.S.G. § 2B1.1(b)(1) where stolen or counterfeit credit cards and access devices are specifically at issue, "loss includes any unauthorized charges made with the . . . unauthorized access device and shall be not less than $500 per access device." U.S.S.G. § 2B1.1 cmt. n.3(F)(i). For the purposes of U.S.S.G. § 2B1.1(b)(1) Application Note 3(F)(i), an unauthorized access device is "any access device that is . . . stolen . . . or obtained with intent to defraud" where an access device is "any card, place, code, account number . . . or other means of account access that can be used . . . to obtain money, goods, services, or any other thing of value . . .". U.S.S.G. §§ 2B1.1 cmt n.3(F)(i); 2B1.1 cmt. n.10(A); 18 U.S.C. §§ 1029(e)(1), 1029(e)(3).

Therefore, as applied to the instant matter, the 923 stolen, yet unused, account numbers were, pursuant to these definitions, unauthorized access devices, for which no less than $500 in loss shall be assigned per access device. The total loss of $461,500 for the 923 unauthorized access devices that were stolen but not yet used was properly calculated pursuant to U.S.S.G. § 2B1.1 Application Note 3(F)(i). Furthermore, the $26,485.43 of undisputed unauthorized transactions was properly

added to the $461,500 as "loss includes any unauthorized charges," which the $26,485.43 was. In sum, Talavera's loss amount is properly calculated as $487,985.43.

Although Talavera utilizes *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), to argue that the definition of actual loss provided in U.S.S.G. § 2B1.1 Application Note 3(A) is the only commentary section that properly interprets the word "loss" contained in U.S.S.G. § 2B1.1(b)(1), and, therefore, the special rule applicable to stolen or counterfeit credit cards and access devices provided in U.S.S.G. § 2B1.1 Application Note 3(F)(i) cannot apply to this matter by the law stated in *Havis*, this Court finds Talavera's arguments unpersuasive. First, the *Havis* court makes clear that the commentary to the United States Sentencing Guidelines through the application notes "serves only to *interpret* the Guidelines' text, not to replace or modify it." *Havis*, 927 F.3d at 386 (citing *Stinson v. United States*, 508 U.S. 36, 44-46 (1993) (emphasis in original)). In fact, the "[c]ommentary binds courts only 'if the guideline which the commentary interprets will bear the construction' . . .. Thus we need not accept an interpretation that is 'plainly erroneous or inconsistent with the' corresponding guideline.'" *Havis*, 927 F.3d at 386 (quoting *Stinson*, 508 U.S. at 45-46).

The *Havis* court analyzed an instance where the plain language of a Guideline section did not include attempt crimes as "controlled substance offense[s]" but the commentary to the Guideline section did. *Havis*, 927 F.3d at 385. The court held that the commentary did not provide an interpretation of the Guideline section at all, but rather added an offense not listed in the Guideline section – an addition that deserved no deference because the commentary, provided by the application notes to Guideline sections, serve as "*interpretations of*, not *additions to*, the Guidelines themselves." *Id.* at 386 (quoting *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (emphasis in original) (internal quotation marks omitted)).

In applying this reasoning to the instant matter, this Court finds that U.S.S.G. § 2B1.1 Application Note 3(A) and U.S.S.G. § 2B1.1 Application Note 3(F)(i) do not add to the confines of the Guideline section U.S.S.G. § 2B1.1(b)(1), but rather provide interpretation, as is necessary. In fact, U.S.S.G. § 2B1.1(b)(1) simply instructs "If the loss exceeded $6,500, increase the offense level as follows:" and provides offense level increases based upon dollar amounts of loss, without further defining loss. Therefore, when U.S.S.G. § 2B1.1 Application Note3(A) provides that loss is the greater of actual loss or intended loss and further defines these terms, this is a proper interpretation of the Guideline section as it does not expand the limits of the Guideline section, but rather narrows it.

Looking then to U.S.S.G. § 2B1.1 Application Note 3(A), it is clear that the actual loss suffered due to Talavera's actions is $26,485.43 – the reasonably foreseeable pecuniary harm that resulted from the offense as this is the amount of the undisputed, unauthorized charges. However, despite Talavera's failure to acknowledge the role of intended loss in his arguments, U.S.S.G. § 2B1.1 Application Note 3(A) specifies that loss is defined as the greater of actual or intended loss, where intended loss is the pecuniary harm Talavera purposely sought to inflict and includes harm that would have been impossible or unlikely to occur – such as utilizing 923 stolen account numbers that had yet to be used for unauthorized purchases. The $26,485.43 of undisputed, unauthorized charges qualify as intended loss as it was harm Talavera purposely sought to inflict, but Talavera also sought to inflict pecuniary harm against the other 923 stolen account numbers, regardless of whether it would have been impossible or unlikely that he would have attempted unauthorized charges on all of these stolen account numbers. The question then, is how to assign a value to the stolen yet unused account numbers.

It is here that U.S.S.G. § 2B1.1 Application Note 3(F)(i) provides the answer by explaining that for stolen or counterfeit credit cards and access devices specifically, loss is no less than $500 per stolen access device. Therefore, this also qualifies as an interpretation of the Guideline section as it does not expand the language found in the Guideline section but rather further narrows the definition of loss as it specifically applies to stolen and counterfeit access devices. Despite Talavera's insistence that the $500 minimum provides a number that must be used instead of the actual loss, this Court does not find this argument to be accurate. To be sure, if the loss on a counterfeit credit card or stolen access device had been $501, surely $501 would be utilized as the loss amount rather than a default $500. This Court finds that the $500 simply provides a mandatory minimum for stolen or counterfeit credit cards and access devices in line with the logic that intended loss, even if yet unaccomplished, is still loss. It is for these reasons, this Court finds U.S.S.G. § 2B1.1 Application Note 3(A) and U.S.S.G. § 2B1.1 Application Note 3(F)(i) in line with the law provided in *Havis* and, therefore, holds that the calculated loss amount pursuant to U.S.S.G. § 2B1.1(b)(1) is $487,985.43. The question then becomes whether the government has met its burden of proof regarding whether this loss amount is attributable to Talavera.

2. Determination of Loss Amount Attributable to Talavera

The government must prove the loss amount attributable to Talavera by a preponderance of the evidence. *United States v. Donadeo*, 910 F.3d 886, 901 (6th Cir. 2018) (citing *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999)). When determining the amount of loss attributable to Talavera, this Court may consider any "relevant conduct," which includes:

> (A) all [criminal] acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant, and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in

> concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were –
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility from that offense.

*Donadeo*, 910 F.3d at 894 (citing *United States v. Hodge*, 805 F.3d 675, 678-79 (6th Cir. 2015); U.S.S.G. § 1B1.3(a)(1)). In sum, "the amount of loss attributable to a defendant may include any loss that results from his/her own criminal conduct, as well as any loss that resulted from certain conduct of others." *Donadeo*, 910 F.3d at 894 (citing *United States v. Kennedy*, 714 F.3d 951, 960-61 (6th Cir. 2013)). The "certain conduct of others," is, necessarily, conduct that is "within the scope of", "in furtherance of", and "reasonably foreseeable in connection" with the "jointly undertaken criminal activity." *See United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002) (explaining that a court must "make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy").

### a) Scope of the Criminal Activity

Therefore, the first step this Court must take to determine the loss amount attributable to Talavera is to "determine the scope of the criminal activity the particular defendant agreed to jointly undertake." *Donadeo*, 910 F.3d at 894 (quoting U.S.S.G. § 1B1.3 cmt. n.3(B) (internal quotation marks omitted)). The scope of a defendant's agreement to engage in jointly undertaken criminal activity can be demonstrated by an admission of guilt to conspiracy. *See United States v. Labib*, 38 F. App'x 257, 261 (6th Cir. 2002); *United States v. Carmichael*, 676 F. App'x 402, 407

(6th Cir. 2017) (explaining that when determining scope, "the court looked to [defendants'] guilty pleas, in which both defendants accepted responsibility" for the conspiracy).

In the instant matter, Talavera pled guilty to engaging in a conspiracy between April 4, 2016 and January 25, 2019 that utilized skimming devices on gas station pumps to steal credit and debit card account numbers, re-encoded the stolen account information on counterfeit cards, and utilized the counterfeit cards to make retail purchases. This establishes the scope of the criminal activity Talavera agreed to jointly undertake, which necessarily includes the $26,485.43 in loss due to unauthorized transactions utilizing the account numbers stolen through the conspiracy and $461,500 in calculated loss due to the possession of 923 stolen, yet unused, account numbers, also obtained through the conspiracy.

### b) Reasonable Foreseeability

The second step this Court must take to determine whether the calculated loss amount is attributable to Talavera is to determine whether the actions of Talavera's co-conspirators were reasonably foreseeable to Talavera in connection with the jointly undertaken criminal activity. Reasonable foreseeability is an objective test. *United States v. Wymer*, 654 F. App'x 735, 754 (6th Cir. 2016) (citing *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994)). As part of this test, a defendant need not be directly involved with, actively participate in, or physically be present during every instance of illegal conduct of his co-conspirators for that conduct to be reasonably foreseeable to the defendant. *See Wymer*, 654 F. App'x at 755 ("A defendant need not be directly involved in a theft" for that theft to be reasonably foreseeable to the defendant); *Campbell*, 279 F.3d at 400-01 (co-conspirator conduct was reasonably foreseeable when a defendant "was aware that the conspiracy was broader than merely the three transactions with which he was involved");

*Carmichael*, 676 F. App'x at 407 (given the scope of Carmichael's participation in the conspiracy, she was still accountable for co-conspirator's actions while she was "at home in Georgia").

With respect to the foreseeability of loss amount specifically, "'[i]n the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity' shall be included in determining the proper loss amount . . .." *Carmichael*, 676 F. App'x at 407 (quoting *United States v. Stoian*, 73 F. Supp. 3d 830, 838 (E.D. Ky. 2014)). First, it is undisputed that Talavera personally caused $26,485.43 in loss with unauthorized transactions and, therefore, foreseeability with respect to this loss amount is not at issue.

With respect to the $461,500 in calculated loss from the 923 stolen, yet unused, account numbers, whether the theft of these account numbers was performed by Talavera himself or his co-conspirators, the theft was reasonably foreseeable to Talavera as the theft of account numbers for use by Talavera and his co-conspirators to complete unauthorized retail transactions was the objective mission of the conspiracy. Furthermore, Talavera was driving the vehicle that contained skimming equipment and the laptop and thumb drive which contained the 923 stolen account numbers. Again, even if Talavera did not actually know exactly how many stolen account numbers the laptop and thumb drive contained, the fact that multiple account numbers were previously successfully stolen and utilized by Talavera for unauthorized transactions as a result of the skimming conspiracy necessarily leads to the conclusion that further theft of account numbers, regardless of how many, was reasonably foreseeable to Talavera given his activities and involvement in the conspiracy. Specifically, the activity in which Talavera engaged was no different than the activity in which Talavera's co-conspirators engaged, even if Talavera was not present for every single theft of account numbers or subsequent use of the stolen account numbers,

and because physical presence is not required to establish objective reasonable foreseeability, this Court finds that the government has met its burden of proof regarding the entire loss amount of $487,985.43 attributable to Talavera.

### IV. CONCLUSION

Therefore, for all the reasons enumerated throughout this memorandum, this Court finds that the loss amount calculated pursuant to U.S.S.G. § 2.B1.1(b)(1) is $487,985.43. More specifically, this Court holds that U.S.S.G. § 2B1.1 Application Note 3(A) and U.S.S.G. § 2B1.1 Application Note 3(F)(i) are in line with the law provided in *Havis* as the commentary interprets the Guideline section and narrows it appropriately rather than adding to it or expanding it. Furthermore, this Court finds that the government has met its burden of proof and, therefore, the entirety of this amount is attributable to Talavera.

Finally, because this Court finds the total loss amount of $487,985.43 attributable to Talavera, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), Talavera's offense level is increased by 12. Therefore, as the parties agree to all other sentencing guideline calculations as enumerated in the body of this Memorandum, Talavera's offense level is 19. With the parties' agreement that Talavera's criminal history score is zero, establishing a criminal history category of I, the sentencing guideline range is calculated as 30-37 months pursuant to U.S.S.G. § 5A. The Court will recognize this sentencing guideline range at Talavera's sentencing hearing for Counts 1 and 4 against Talavera, which are grouped for the purposes of sentencing. All 18 U.S.C. § 3553(a) factors will be addressed at the sentencing hearing and are not discussed herein.

IT IS SO ORDERED.

DATE: May 11, 2020                                       /s/ John R. Adams
                                                                    Judge John R. Adams
                                                                    UNITED STATES DISTRICT COURT